```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
PHILIP A. DUNN o/b/o IAN W. DUNN,

                    Plaintiff,           08-CV-0704-C

            v.                           **DECISION**
                                         **and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff Philip A. Dunn, on behalf of Ian W. Dunn, brings this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g) of the Social Security Act ("the Act") seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits. Specifically, Plaintiff alleges the decision of the Commissioner was not based on substantial evidence, was based on errors of law, that Plaintiff's prior claims should be reopened, and is in violation of Title II of the Act as well as the Commissioner's Regulations promulgated thereunder.

The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)")on the grounds that the Administrative Law Judge's ("ALJ") decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings pursuant to Rule 12(a), on grounds that the Commissioner's decision

1

was erroneous and not supported by substantial evidence in the record. The Court finds that the decision of the Commissioner for the reasons set forth below, is supported by substantial evidence and is in accordance with applicable law and therefore the Commissioner's motion for judgment on the pleadings is granted.

## BACKGROUND

On September 27, 1995 and July 13, 1994, Plaintiff applied for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") respectfully, alleging disability since September 1, 1994, claiming an emotional problem. (Transcript of Administrative Proceedings at page 471-73, 474)(hereinafter "T.") Plaintiff's application was denied initially on March 25, 1996, and on reconsideration on July 16, 1996. Plaintiff then filed a timely request for a hearing on September 12, 1996 which was scheduled for August 7, 1997 before an Administrative Law Judge ("ALJ"). Plaintiff failed to attend the hearing. (T. at 55-55.) On August 8, 1997, a notice to show cause for failure to appear was mailed to Plaintiff to inform Plaintiff that unless he contacted the ALJ by August 27, 1997 and provided good cause for failure to appear, the request for hearing would be dismissed. Plaintiff received the notice on August 12, 1997 but did not respond. On September 10, 1997, the ALJ dismissed Plaintiff's request for hearing because Plaintiff did not establish a good reason for his failure to appear at his scheduled hearing. As such, the July 16, 1996 determination

2

denying Plaintiff's SSD and SSI applications remained the Commissioner's final determination.

On January 19, 2001, Plaintiff filed a second SSD and SSI application, alleging disability since June 15, 1995. Plaintiff, on November 15, 2001, and January 31, 2003, requested that his prior application be reopened "because of error on the face of the record . . . and additional medical evidence." Plaintiff also claimed that his "psychological condition interfered with his ability to appeal." (T. at 50, 294.) Plaintiff's SSI application was granted, but On October 16, 2001, his SSD claim was denied because he was not disabled prior to the expiration of his disability insurance on June 30, 1998. Plaintiff then filed a timely request for a hearing, which was held on February 20, 2003. Plaintiff attended the hearing with counsel. The ALJ considered plaintiff's case <u>de novo</u> and on March 20, 2003, ALJ Harvey issued an unfavorable decision and denied Plaintiff's applications for periods September 1, 1994 through July 16, 1996 applying the doctrine of <u>res judicata</u>. (T. at 16.) He then denied plaintiff's claims for the relevant period of review July 17, 1996 through June 30, 1998. This became the Commissioner's final decision on December 9, 2004 when the Appeals Council denied Plaintiff's request for review. Plaintiff then initiated a federal court action in the Western District of New York. Thereafter, the Court remanded the case back to the Commissioner for further administrative

3

proceedings. (T. at 342-49.) On November 13, 2005, the Appeals Council remanded the case back to ALJ Harvey, vacating only the unfavorable portion of ALJ Harvey's prior determination. Plaintiff died on March 6, 2007. On June 24, 2008, a supplemental administrative hearing was held in which the ALJ considered the case de novo. (T. at 326-38.) On July 23, 2008, ALJ issued a decision denying Plaintiff's SSD and SSI claims. This became the Commissioner's final decision as Plaintiff did not file exceptions with the Appeals Council, and since the Appeals Council did not act on its own motion. Plaintiff filed a new civil suit. (T. at 327.)

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a

reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by substantial evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**II. The ALJ Properly Did Not Reopen Plaintiff's Prior Claim**

Section 205(g) of the Social Security Act provides that "any individual, after any final decision of the Secretary made after a hearing to which he was a party... may obtain a review of such decision by a civil action..." 42 U.S.C. § 405(g). The denial of a claimant's request to reopen a determination is not a final decision subject to judicial review. 20 C.F.R. § 404.903(l).

5

However, federal courts may review a decision not to reopen a determination if the Commissioner has "constructively reopened [a] case" by reviewing the entire record and rendering a decision on the merits. Velsor v. Astrue, 2009 U.S. Dist. LEXIS 38346 (S.D.N.Y. 2009), citing Byam v. Barnhart, 336 F.3d 172, 180 (2d Cir. 2003).

Courts may also review a decision not to reopen a determination where a plaintiff has raised a "colorable" constitutional challenge to the Commissioner's action. Califano v. Sanders, 430 U.S. 99, 109 (1977). A court can consider a due process claim raised as a ground to reopen a prior final decision where claimant's mental condition prevented pursuit of administrative remedies. Canales v. Sullivan, 936 F.2d 755, 758 (2d Cir. 1991).

Plaintiff argues the ALJ implicitly reopened Plaintiff's previous application because the ALJ held a hearing "relative to the merits" of Plaintiff's prior application. (Plaintiff Sur-Reply at 2). The ALJ's actions, however, do not constitute a constructively reopened case that rendered a decision on the merits. While the ALJ looked at the previous claim, the ALJ did so to determine whether there was good cause to reopen the determination. See Byam v. Barnhart, 336 F.3d 172 (2d Cir. 2003)(where the ALJ considered earlier SSD and SSI applications for the limited purpose of deciding whether there was good cause to reopen them). These medical records were the only ones available as

6

there are no medical records during the relevant period of review, July 17, 1996 through June 30, 1998.

While Plaintiff argues his mental condition prevented him from attending his hearing (Plaintiff Brief at 19), Plaintiff's medical records suggest otherwise. Plaintiff was diagnosed with PTSD, but medical records show that medication reduced his symptoms. Plaintiff reported that he felt less irritable, less dysphoria, less anxiety, and that "the edge is taken off." (T. at 139). Dr. Delany stated Plaintiff had good social and interpersonal skills "as he is able to stay sober *and* manage his PTSD symptoms." (T. at 592). Further, Plaintiff in May 1996 stated his PTSD symptoms had lessened and that while there remained some PTSD symptoms, he was at "a status much better than in many years" (T. at 137).

Therefore, because the ALJ did not open Plaintiff's previous application, nor did Plaintiff adequately raise a colorable claim, this Court lacks jurisdiction to review the ALJ's decision not to reopen Plaintiff's prior application. However, for the sake of completeness, the Court will briefly review the Commissioner's argument in which he relied upon the doctrine of res judicata ("res judicata").

The ALJ properly relied upon 20 C.F.R. ¶ 404.957(c)(1) in determining that the Commissioner was precluded from further consideration of plaintiff's 1995 concurrent application because of

7

the administrative decision of July 16, 1996. (T. at 330.) When a denial has become final by administrative or judicial action, res judicata enables the Commissioner to deny an application rather than consider it on the merits when a previous application by a claimant based on the same issues has been denied. 20 C.F.R § 404.957(c)(1). The Commissioner may invoke res judicata to a claim for social security benefits in cases where the claimant seeks to reopen a claim that has already had a final decision. Bigelow v. Astrue, 2009 U.S. Dist. LEXIS 57121 (W.D.N.Y. July 6, 2009). A finding of disability for the period prior to July 17, 1996 is barred by the ALJ's decision dismissing plaintiff's September 1996 request for a hearing. (T. at 53-55, 330.)

However, there are exceptions to the application of res judicata. A claim may be reopened within four years for disability insurance benefits claims and within two years for SSI claims of the date of the notice of initial determination if good cause is shown. 20 C.F.R. §§ 404.988(b) and 416.1488(b). Good cause may be shown when new and material evidence is furnished, or when evidence that was considered in making the determination clearly shows on its face an error was made. 20 C.F.R § 404.989(a)(1)(3). A final determination may also be reopened at any time if that determination was obtained by "fraud or similar fault." 20 C.F.R. § 416.1488. In determining whether a determination or decision was obtained by fraud or similar fault, the Commissioner will take into

8

account any physical, mental, educational, or linguistic limitations which the claimant may have had at that time. Id.

As discussed above, Plaintiff's medical records do not show that Plaintiff's PTSD symptoms prevented him from attending the hearing. Plaintiff did not establish the presence of "fraud or similar fault" due to a mental impairment. Thus, the ALJ correctly applied res judicata. The evidence in the record clearly established that plaintiff failed to appear at the scheduled hearing and failed to notify the hearing office that he would be unable to appear. (T. at 53-55.)

### III. The Commissioner's Decision to Deny Plaintiff Benefits was Supported by Substantial Evidence in the Record.

The ALJ in his decision found that Plaintiff was not disabled within the meaning of the Social Security Act. In his determination, the ALJ adhered to the Social Security Administration's five-step sequential analysis in determining disability benefits. See 20 C.F.R. § 404.1520. The ALJ also followed 20 C.F.R. § 404.1535(b) which states an individual shall not be considered disabled under the Act if alcoholism or drug addiction is a contributing factor material to the Commissioner's determination that the individual is disabled.

Under Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity (T. at 33). At Step Two, the ALJ determined Plaintiff's drug and alcohol abuse and Post Traumatic Stress Disorder ("PTSD") were severe impairments (T. at 333-34). At

9

Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments which met or equaled the criteria of the Listings (T. at 334). Next, the ALJ found that in light of Plaintiff's substance abuse, Plaintiff had the residual functional capacity ("RFC") to perform heavy work with occasional limitations in the ability to perform certain activities within a schedule, maintain regular attendance, be punctual with customary tolerance, complete a normal workday and workweek, accept instruction and respond appropriately to criticism from supervisors, get along with co-workers or peers, and could only work at a job with a minimal amount of stress (T. at 334-35). For Steps Four and Five, the ALJ determined that Plaintiff could not return to his past relevant work or perform any other work that existed in significant numbers in the national economy (T. at 335-36).

  **A.**  **The ALJ's Decision that But for Plaintiff's Drug and Alcohol Abuse Plaintiff Would not Be Disabled is Supported by Substantial Evidence.**

Plaintiff's medical records establish Plaintiff had a history of drug and alcohol abuse which began when Plaintiff was fourteen (T. at 129, 156, 169, 587). Plaintiff also had eight alcohol related arrests (T. 161). Plaintiff was hospitalized for treatment due to substance abuse in 1985 and again in 1987 where he was discharged without finishing treatment because he used drugs during his stay (T. 129, 524, 550). From February 6 to March 2, 1995, Plaintiff was admitted again for treatment of drug and alcohol

addiction, then placed in a halfway house (T. 133-71, 579, 579-86, 599). Further, even after the relevant period of review, Plaintiff was hospitalized from November 30 to December 4, 2000 for suicidal ideation and depression following a relapse from alcohol and again from July 13 to August 1, 2003 (T. at 205-16, 396).

The "treating physician rule" applies to retrospective diagnoses that relate to "some prior time period during which the diagnosing physician may or may not have been a treating source." <u>Martinez v. Massanari</u>, 242 F. Supp 3d 372, 377 (S.D.N.Y. 2003). This means a retrospective diagnosis by a treating physician will be given controlling weight unless such diagnosis is contradicted by other medical evidence. <u>Rivera v. Sullivan</u>, 923 F.2d 967, 968-69 (2d Cir. 1991).

Plaintiff argues that the ALJ did not properly weigh the expert medical opinion of Plaintiff's treating physician (Plaintiff's Brief at 19). However, the ALJ did afford the proper weight to the medical opinions pursuant to 20 C.F.R. § 404.1527(d) by not affording controlling weight to Dr. Rajendran's opinion (T. at 335). While Dr. Rajendran believes Plaintiff's past alcohol and substance abuse are directly related to Plaintiff's work experience PTSD, Dr. Rajendran did not start treating Plaintiff until 2001, after Plaintiff's disability insurance expired on June 30, 1998(T. at 289) and well after Plaintiff was diagnosed with PTSD. In addition, Dr. Rajendran's 2001 opinion is not consistent with

11

Plaintiff's medical records which show that Plaintiff's PTSD symptoms were improving during 1996 (T. at 137, 139, 592). Moreover, Plaintiff's drug and alcohol abuse problems began as a teenager at age 14, 7 years before he became a firefighter at age 21 (T. at 129, 156, 169, 587)and supported by his testimony that he would drink a minimum of a 12-pack of beer per day (T. at 587). Dr. Rajendran's opinion - that plaintiff's alcoholism and drug addiction had not been a contributing factor material to plaintiff's inabilitiy to engage in substantial employment since June 1, 1994 (T. at 290) is inconsistent with the medical evidence in the record.

The ALJ also properly evaluated Dr. Robinson's February 1990 report and Dr. LaRoche's reports. Dr. Robinson treated Plaintiff from August 25, 1988 through February 14, 1989 and diagnosed Plaintiff with PTSD, depressive disorder, and drug and alcohol abuse. While Dr. Robinson made such diagnosis, records from Niagara Falls Community Health Center confirm otherwise. (T. at 132, 148.) Plaintiff argues that Dr. LaRoche determined Plaintiff's PTSD symptoms continued despite his medications, and that the medication regime merely "took the edge off" Plaintiff's symptoms as such his PTSD rose to the level of "disabled" within the meaning of the Act(Plaintiff Memorandum at 20, T. at 139). However Dr. LaRoche's clinical findings state otherwise. In December 1995 a mental status exam revealed Plaintiff was pleasant and cooperative, had no

abnormalities of thought content or form, or perceptions. (T. at 143). Plaintiff denied suicidal/homicidal ideation, and other mental status exams revealed no abnormalities of cognition, abstract abilities, or general information. (Id.). In March 1996, Plaintiff stated his PTSD symptoms improved with medication, and examination confirmed Plaintiff was more relaxed and less anxious (T. at 139). In May 1996, Plaintiff stated his symptoms had lessened. (T. at 137).

Plaintiff further argues that the ALJ erred in evaluating the opinions of consulting examiners Drs. Delany and Butensky, and State agency medical consultant, Dr. Moses. (Plaintiff Memorandum at 21-23). The ALJ accepted Dr. Delany's opinion that Plaintiff met the criteria for PTSD and that Plaintiff could be an excellent candidate for future employment, so long as he is able to stay sober. While Plaintiff focuses on Dr. Delany's note that Plaintiff "could well be an excellent candidate for future employment" (Plaintiff Memorandum at 22) and that Plaintiff's PTSD has precipitated some of his substance abuse, Dr. Delany states that Plaintiff appeared to "have good social and interpersonal skills as he is able to stay sober and manage his post traumatic stress disorder symptoms" (T. at 592).

The ALJ specifically noted that he did not give significant weight to Dr. Butensky's opinion, because her report was outside the relevant period under consideration (T. at 333-37).

13

Dr. Butensky examined Plaintiff on August 30, 2001, well after Plaintiff's disability insurance expired and gives no retrospective opinion on the relevant period of review. In addition, ALJ properly did not give significant weight to Dr. Moses's opinion as this was also in 2001 and did not give retrospective opinion. As such, the ALJ properly afforded proper weight to all of Plaintiff's physicians.

Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's impairments and RFC assessment, and determination that Plaintiff was capable of performing his past relevant work. Specifically Plaintiff argues that the ALJ erred in not considering at all Plaintiff's knee, back and hand impairments. (P. Mem at 28). While the ALJ did not address Plaintiff's physical impairments (T. at 326-38), a reviewing court may affirm on a basis other than that identified in the ALJ decision, when a remand to correct the error would still result in the same outcome. Alam v. Ganzales, 438 F.3d 1384, 187 (2d Cir. 2006).

Plaintiff under went an arthrotomy of his right knee with open reduction internal fixation of comminuted fracture of his right patella in March 1994 (T. at 565, 574-75), and had the two screws removed by Dr. Newman because of pain (T. at 558-59). However the medical records do not show Plaintiff's pain was severe to the extent that he would be "disabled" under the Act. Medical records

14

indicate Plaintiff's physical impairments worsened only after Plaintiff's disability insurance expired (T. 223-230, 226).

Further, the ALJ's RFC determination is supported by substantial evidence. Plaintiff could work if he stopped abusing drugs and alcohol (T. at 133-171), mental examinations revealed no abnormalities of cognition, abstract abilities, and that Plaintiff was pleasant and cooperative (T. at 143). Plaintiff also denied suicidal/homicidal ideation (Id.). When Plaintiff began medication for his PTSD February 1996, Plaintiff's symptoms were decreased, and in March and May 1996 Plaintiff continued to improve and stated his PTSD symptoms had lessened (T. at 139, 137). Lastly, Plaintiff's prognosis at discharge from the halfway house was "poor" because he relapsed five times since January 1996 (T. at 134), not because of Plaintiff's PTSD symptoms. Treatment notes from other sources also support the ALJ's finding that Plaintiff could function if he did not abuse drugs and alcohol. (See T. at 483, 507-09, 590-96).

As such, the medical evidence confirms the ALJ's determination that if Plaintiff did not abuse drugs and alcohol, Plaintiff would be able to function.

Following his RFC assessment, the ALJ properly evaluated Plaintiff's impairments and concluded that Plaintiff was capable of performing his past relevant work as a truck driver. In making his decision, the ALJ considered all of the medical evidence and

15

properly concluded Plaintiff could perform a range of heavy work if he stopped his drug and alcohol abuse (T. at 334-38). The ALJ's determination relied on and is also supported by Vocational Expert ("VE") testimony (T. at 459). In his hypothetical to the VE, the ALJ properly used RFC assessment and Plaintiff's requirement for a minimal stress environment. Based on this hypothetical the VE stated "the individual would be able to perform the truck driving work." (T. at 459).

> **B.** **The ALJ Properly Evaluated Plaintiff's Credibility and Properly Weighed the Testimony of Plaintiff's Ex-Wife**.

Under the Act, there must be clinical evidence that shows the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 404.1529(b). If plaintiff alleges symptoms of greater severity than can be established by the objective medical findings, the ALJ will then consider other evidence. Such evidence includes factors: plaintiff's daily activities, the nature, extent, and duration of his symptoms, and the treatment provided. 20 C.F.R. § 404.1529(c)(3).

While Plaintiff "testified honestly and candidly at his hearing concerning his condition" (Plaintiff Brief at 25), the medical record affirm Plaintiff's subjective symptoms to the extent Plaintiff alleged. As discussed earlier, when Plaintiff was not

abusing drugs and alcohol, mental examinations showed Plaintiff did not have abnormalities of thought content, form or perceptions, Plaintiff was pleasant and cooperative, and Plaintiff denied suicidal/homicidal ideation (T. at 137, 139, 143, 270-71).

Further, Plaintiff did not seek treatment for PTSD before the date he was last insured. Dr. Robinson last treated Plaintiff in 1989, which is before the period of review (T. at 132). Plaintiff first received medication for his PTSD symptoms in February 1996, while being treated at the halfway house and only because he finally agreed to take the medication (T. at 139, 141). As such, because there is a lack of treatment during the relevant time period, Plaintiff's statements are not entirely credible as they are not supported by medical evidence in the record. Mahoney v. Apfel, 48 F. Supp. 2d 237, 246 (E.D.N.Y. 1999)(where the court held the ALJ may "attach significance to plaintiff's failure to seek medical treatment). (See Fitgerald v. Astrue, 2009 U.S. Dist. LEXIS 111054 (D. Vt. Nov. 30, 2009))

The ALJ also properly afforded little weight to the testimony of Cheryl Hodge, Plaintiff's former wife. "It is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Secretary of Health and Human Services, 728 F.2d 588, 591 (2d Cir. 1994) quoting Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1982). (See

17

Calabrese v. Astrue, 2009 U.S. App. LEXIS 28161 (2d Cir. 2009). Ms. Hodge was able to testify regarding the traumatic incidents Plaintiff was subjected to as a firefighter, and that Plaintiff had PTSD (T. at 447-452). However, Ms. Hodge's testimony only covers the years 1980 to approximately 1985, which is not within the relevant period. As such, in evaluating Ms. Hodge's testimony along with the evidence in the medical record, the ALJ appropriately afforded little weight to her testimony.

## **CONCLUSION**

For the reasons set forth above, I conclude that the ALJ properly determined that plaintiff was not disabled within the meaning of the Act during the period of July 17, 1996 through June 30, 1998, which is supported by substantial evidence in the record. I also conclude that the ALJ correctly applied 20 C.F.R. ¶ 404.957(c)(1) and found that res judicata prevented reconsideration of the Commissioner's denial of Plaintiff's claim for the period of September 1, 1994 through July 17, 1996.

For the reasons set forth above, I grant Commissioner's motion for judgment on the pleadings. Plaintiff's cross-motion for summary judgment is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                         S/Michael A. Telesca
                                _____
                                      MICHAEL A. TELESCA
                                   United States District Judge

Dated:    Rochester, New York
            January 27,2010